*655 OPINION.
Phillips:
Petitioner claims that under the contract set forth in our findings the agreed price to be paid for all the stock purchased was $650 per share, which was the price paid for the stock purchased April 1, 1920, and for the options and that the differences between this price and the prices agreed to be paid and actually paid on the 15th day of January, 1922, and 1923, respectively, represent interest. It points out that these excesses precisely equal interest at the rate of 6 per cent from April 1,1920, to the date of each respective payment. Upon this basis it asserts that the payments made on January 15, 1922, and January 15,1923, include interest in the respective amounts of $34,937.50 and $54,437.50. In this connection our attention is invited to the provision of the contract by which the control of the corporation was vested in the purchasers until the contract was completed by performance or terminated by forfeiture, and to the further agreement that during such period no dividends were to be declared or paid. The deduction is claimed under section 234 (a) (2) of the Revenue Act of 1921, which provides:
All interest paid or accrued witliin the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title.
The interest allowed as a deduction under the above provision is that which is paid or accrued on the “ indebtedness ” of a corpora *656 tion and the term “ interest ” is defined as “ a consideration paid for the use of money or for forbearance in demanding it when due.” See Anderson & Co., 6 B. T. A. 713. In order to deserve the benefit of this deduction petitioner must show that it incurred an indebtedness to the sellers of the stock which was binding on it as of April 1, 1920. Jessie Chase, 19 B. T. A. 1040. If the excess of the amounts paid over the initial price in fact represents interest, then the whole of such excess is not deductible in the year paid, since petitioner kept its books of account and made its income-tax returns upon an accrual basis. Upon such a basis all interest should be accrued ratably over the period from April 1, 1920, to the date of each payment. Chatham & Phenix National Bank, 1 B. T. A. 460; Cumberland Glass Manufacturing Co., 2 B. T. A. 1122. This brings us to the question whether petitioner did incur any interest which it had the right to accrue and deduct.
The agreement is open to two interpretations. The first and most obvious is that disclosed by the words used. Thus construed, it appears that petitioner did not agree to purchase all the stock deposited on that date and pay for it in four installments, but that it agreed to purchase one-fourth of the shares deposited, to be paid for at once, coupled with options to purchase one-fourth on January 15, 1921; to purchase another one-fourth January 15, 1922, and to purchase the remaining fourth on January 15, 1923. Until such options were exercised by petitioner, it incurred no obligation to the sellers which the latter might have enforced against it. There being no binding obligations until the options were exercised, there was no indebtedness on which interest might have accrued. The contention made by petitioner’s counsel that the options Avere exercised Avhen the final payment was made in April, 1920, and that thereafter petitioner was bound to carry out the purchase of the remaining shares is not supported by the agreement. The first payment created the option on the remaining 75 per cent, to be exercised by making payment.
The other interpretation is that, taking into consideration the large forfeitures which petitioner Avould have suffered if it had not complied with the terms of the agreement, and considering also that petitioner was to vote the stock and control the corporation, the contract was one of sale and purchase, as of April 1, 1920, of all the stock deposited, to be paid for in four installments. We do not believe this to be the true construction; but if, for our present purpose, it be so conceded, Ave find nothing in the contract Avith reference to interest and Ave can not insert therein stipulations which it does not contain. The most that can be said is that a resort to computation discloses that the various excess amounts paid equal 6 per gent on the amount paid on April 1, 1920, from that date to the re *657 spective dates of payment. But this was not all the contract provided. The sum paid April 1, 1920, was not paid solely for stock but also for the options. The sellers had the right to deposit additional stock up to July 1, 1920. The price to be paid for such stock was the same as that paid for the stock deposited on April 1, 1920.
Petitioner had 30 days after January 15 of each of the years 1921, 1922, and 1923 to make the payments in such years and there is no provision for any additional payment or interest because of such delay. Construing the contract as petitioner requests, we would be compelled to find that the parties have agreed upon a purchase price for the stock, payable in installments and not for the payment of any interest. The fact that the later installments exceed the first payment does not constitute the excess interest. This question, has often arisen in the courts when purchasers have sought to have such excess declared usurious. The courts have held that the excess of such payments over cash prices was not interest but that the whole of the payments constituted the agreed purchase price. Such has been the consistent holding of the Board. Carl Lang et al., 3 B. T. A. 417; Marsh & Marsh, Inc., 5 B. T. A. 902; Anderson & Co., supra; Daniel Brothers Co., 7 B. T. A. 1086. Under neither construction of the contract did petitioner incur any interest which it might have accrued on its books and deducted from its gross income.

Decision will he entered for respondent.